JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

ISMAEL P.-N.,

Plaintiff,

v.

FRANK J. BISIGNANO, Commissioner of Social Security,

Defendant.

No. 2:25-cv-07342-BFM

**MEMORANDUM OPINION AND ORDER**

This case concerns an applicant for Social Security benefits. For the reasons discussed below, the decision of the ALJ is **reversed**, and the matter remanded for further administrative proceedings.

## I. PROCEDURAL HISTORY

On July 29, 2022, Plaintiff Ismael P.-N.[1] applied for Supplemental Security Income, alleging an onset date of April 9, 1997. (AR 220-30.) Plaintiff's application was denied at the initial level of review and on reconsideration, so

[1] In the interest of privacy, this Memorandum Opinion and Order uses only the last initial of the non-governmental party in this case.

he requested a hearing before an Administrative Law Judge ("ALJ"). (AR 108-136, 155.) On June 4, 2024, an ALJ held a hearing and heard from Plaintiff and a vocational expert. (AR 38-56.) After considering the evidence, the ALJ issued an unfavorable decision dated July 19, 2024. (AR 17-33.)

The ALJ found at step two of the disability analysis[2] that Plaintiff suffered from the following severe impairments: autism spectrum disorder; Asperger's syndrome; attention deficit hyperactivity disorder; and anxiety disorder. (AR 20.) He was moderately limited as to each of the Paragraph B criteria, which did not entitle him to an outright grant of relief at step three. (AR 24-25.) After reviewing Plaintiff's testimony and the medical record, the ALJ concluded that Plaintiff retained a residual functional capacity ("RFC")[3] for work at all exertion levels with limitations on the complexity of his work, pace, social interactions, and only occasional changes and work-related decision-making. (AR 26.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded Plaintiff would be capable of performing work that exists in significant numbers in the national economy. (AR 32-33.)

On June 13, 2025, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision final. (AR 1-3.) Dissatisfied with the agency's resolution of his claim, Plaintiff filed a Complaint in this Court.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported

---

[2] A five-step evaluation process governs whether a claimant is disabled. 20 C.F.R. § 404.1520(a)-(g)(1). Only the steps relevant to the issues raised are discussed here.

[3] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. *See* 20 C.F.R. § 404.1545(a)(1).

by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence. . . is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the court may not substitute its judgment for that of the Commissioner. *Id.* at 720-21.

## III. DISCUSSION

Plaintiff raises a single issue: that the ALJ impermissibly rejected Plaintiff's testimony suggesting greater limitations than the ALJ found to exist. (ECF 16 (Pl. Br.) at 7-17.) Defendant responds that the ALJ adequately discounted Plaintiff's testimony based upon the medical record, daily activities, and Plaintiff's failure to seek available mental health resources. (ECF 20 (Def. Br.) at 2-6.)

### A. Legal Framework

Where a claimant testifies about subjective medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets that first standard and there is an affirmative finding of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, he must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ must show his work. *Smartt*, 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

The sufficiency of the explanation should be judged in light of its purpose—ensuring that this Court's review is "meaningful." *Brown-Hunter*, 806 F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony[.]'" *Id.* at 493 (citation omitted).

Judged by that standard, the ALJ gave inadequate reasons and explanation for discounting Plaintiff's testimony.

**B. Plaintiff's Testimony**

Plaintiff provided subjective symptom testimony at the hearing. (AR 41-52.) Plaintiff's testimony has been fairly summarized in the parties' briefing and will not be repeated here, but his primary symptoms were loss of focus and needing reminders to stay on task for even simple tasks (*See* AR 42.)

**C. The ALJ's Decision**

The ALJ summarized Plaintiff's testimony and then concluded that the record nevertheless supported the assessed RFC. (AR 27.) The ALJ proceeded to summarize the medical evidence in the record. (AR 27-29.) The ALJ noted that he considered Plaintiff's full-scale intelligence quotient, variable concentration, social interaction, and daily activities. (AR 28-29.) The ALJ incorporated some limitations on task complexity, interaction with others, and work environment in the assessed RFC, but concluded that additional limitations were not necessary to account for Plaintiff's subjective testimony concerning his symptoms. (AR 26, 29.)

**D. Analysis**

An ALJ is required to "identify the testimony she or he finds not to be credible, and must *explain* what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added). Here, in contrast, the ALJ merely summarized the medical records, and concluded that Plaintiff's allegations were not fully consistent with them. In doing so, the ALJ nearly replicated the explanation found to be inadequate in *Brown-Hunter*, 806 F.3d at 494 (criticizing ALJ for doing nothing more than stating her conclusion concerning the claimant's credibility and then summarizing the medical evidence that supported her RFC determination). The same can be said for the ALJ's discussions regarding Plaintiff's daily activities and treatment: the ALJ lumped all of Plaintiff's mental-health conditions together, concluded that Plaintiff's testimony was undermined, but did not explain how any particular

evidence undercut Plaintiff's specific allegations about focus, pace, and the need for reminders. (AR 27-29.) The Court is not supposed to speculate about why a claimant's testimony has been rejected, and the ALJ's explanation leaves it in precisely that position. The failure to explain alone, warrants remand.

*Brown-Hunter* also makes clear that courts err when they undertake the ALJ's duty to try to link particular testimony to specific evidence that the ALJ might have found to undermine it. *Id.* at 494 (ALJ's "error could not be corrected by the district court's statement of links between claimant testimony and certain medical evidence."). But, even if the Court could do so, the ALJ's apparent reasoning here is not persuasive. Giving the ALJ every benefit of the doubt, the decision mentions three possible reasons for discounting Plaintiff's testimony: (1) Plaintiff's testimony was inconsistent with the objective medical evidence; (2) Plaintiff's testimony was undermined by his unexplained failure to seek further assistance that he was eligible for; (3) improvements with treatment; and (4) Plaintiff's testimony was inconsistent with his daily activities. (AR 27-29.) None of these, on the facts of this case, is a specific, clear and convincing reason for rejecting Plaintiff's testimony.

First, the ALJ's opinion suggests that he found that Plaintiff's testimony was not fully consistent with the medical evidence in the record. (AR 27.) The lack of supporting medical evidence cannot form the sole basis for discounting testimony, but an ALJ may consider *conflicting* testimony. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.").

The ALJ's recitation of the relevant medical record, however, reveals a mix of normal and abnormal findings in Plaintiff's ability to interact and

maintain pace with tasks. (AR 27-29.) A cited October 2020 assessment, for instance, noted that Plaintiff was "highly focused" on visual tasks and had good frustration tolerance but had "trouble organizing and verbalizing his thoughts," initially had difficulty responding to questions, and often looked to his mother who encouraged him to speak. (AR 303, 307 (noting "[Plaintiff] does not give complex directions with 3 or more steps, remember to do something an hour later, understand sarcasm, writes simple sentences, follow instructions involving 3 actions, respond to questions that use the word "why," or tell about everyday experiences in detail.").) The ALJ also cited a similarly mixed December 2022 evaluation, which noted that Plaintiff was "good at math" and could do serial sevens but not serial threes, had linear and goal-oriented thinking, but also noted that Plaintiff did not manage his own money, would not go places by himself, and would get around by being driven by others. (AR 805-06.) The ALJ cited an October 2023 examination report which noted that Plaintiff comprehended most aspects of the evaluation and had adequate verbal response time but had variable concentration and attention spans as well as a weakness in processing speed. (AR 815-17.) After cataloguing these and other mixed findings, the ALJ simply concluded that "while the claimant had some difficulty remembering information, persisting, concentrating, interacting with others, and adapting to stress, his symptoms were not so severe as to preclude all work." (AR 29.) The ALJ offered no explanation for the conclusion that the "normal" findings were more probative than the "abnormal" findings in processing, responding, and concentrating highlighted in the evaluations—let alone why any of those abnormal findings undermined Plaintiff's testimony about the severity of his issues. In this, the ALJ erred. *See O'Connor v. Berryhill*, 355 F. Supp. 3d 972 (W.D. Wash. 2019) (finding the ALJ erred when he "failed to explain why the normal results are more probative than the numerous abnormal results also found in the record") (citing *Reddick v. Chater*, 157 F.3d

715, 725 (9th Cir. 1998)). On this record, and without further explanation by the ALJ, inconsistency with the medical record was not an appropriate basis for discounting Plaintiff's testimony.

Second, the ALJ pointed to Plaintiff's apparent failure to engage in offered Regional Center services and delay in seeking mental health treatment until May 2024. (AR 28; *see* Def. Br. at 4.) But this is contrary to Plaintiff's testimony that he was involved with the Regional Center and that they helped him with accessibility accommodation and provided programs and mentorship. (AR 51-52.) And, to the extent that there was some delay in seeking mental health treatment to discount his testimony, the Ninth Circuit has strongly discouraged ALJs from using the failure to seek treatment as a basis to deem a mental impairment not severe or functionally limiting, recognizing that the failure to seek appropriate treatment may be colored by the impairment itself. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (holding that, although a claimant "may have failed to seek psychiatric treatment for his mental condition, it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (internal quotation marks and citation omitted).

Third, the ALJ gestured at Plaintiff's "improvement with minimal treatment." (AR 28.) While effective control of symptoms may be a basis for discounting testimony, the Ninth Circuit has emphasized that, "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. . . [and] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall

diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace."); *see also Jana D. R. v. Saul*, No. 5:20-cv-01098-AFM, 2021 WL 2826436, at *4 (C.D. Cal. July 7, 2021) (finding that ALJ erred by discounting plaintiff's testimony based upon effective treatment where the "record reflects that Plaintiff's treatment provided only limited periods of relief from her pain and did not effectively control Plaintiff's pain.").

Here, it is unclear which improvements the ALJ viewed as relevant to Plaintiff's symptoms testimony or how those improvements undermined the testimony. (*See* AR 28.) Moreover, the cited treatment record only reveals mixed results and minimal improvements. (*See* AR 841 (May 23, 2024, report noting that Plaintiff had a "good attitude" but preoccupied cognitive functioning and impaired functional status); AR 842 (May 30, 2024, report noting that Plaintiff was willing to continue working on childhood trauma and reported that "he was able to go outside more with his girlfriend" but still presented with low grade anxiety, blunted affect, and impaired functional status).) Given the lack of apparent sustained improvement, the ALJ could not have used Plaintiff's treatment to undermine his testimony—or at the very least, he owed a more cogent explanation of why the perceived improvements undermined Plaintiff's testimony. *Garrison*, 759 F.3d at 1017.

Finally, the ALJ highlighted Plaintiff's activities of daily living and noted that he took Plaintiff's "daily activities" into account in his RFC formulation. (AR 29.) The ALJ noted that, as of October 2023, Plaintiff reported that he was able to dress and bathe independently but did not drive or use public transportation and required help to make meals, complete household chores, and manage his funds. (AR 29 (citing AR 815).) The ALJ also noted that Plaintiff had earlier reported that he did not drive, needed reminders for all his personal

care and hygiene tasks, and had difficulty taking care of himself. (AR 28 (citing AR 303).)

An ALJ may discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree of disability alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*. Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

But the Ninth Circuit has cautioned that a claimant's ability to complete minimal daily activities does not detract from the claimant's credibility. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("evidence that [claimant] could assist with some household chores was not determinative of disability. 'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'") (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Here, the basic self-care cited by the ALJ is among the activities that the Ninth Circuit has cautioned against using to discredit symptoms testimony. *Id.* As Plaintiff's reported daily activities appear to be minimal, they are not a proper basis for discounting Plaintiff's symptoms testimony. *Vertigan*, 260 F.3d at 1050.

Defendant resists this conclusion, piecing the record together to explain the ALJ's thinking in discounting Plaintiff's testimony. (Def. Br. at 3, 5.) But it is the ALJ's role to explain how Plaintiff's testimony is undercut by the record, not counsel's and not the Court's. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Brown-Hunter*, 806 F.3d at 494.

As the ALJ erred in discounting Plaintiff's subjective symptoms testimony, the Commissioner's decision is reversed.

## IV. REMEDY

Remand (as opposed to an outright grant of benefits) is appropriate as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V. CONCLUSION AND ORDER

For the reasons above, it is therefore ordered that: (1) Plaintiff's request for reverse and remand (ECF 16) is **granted**; (2) the decision of the Commissioner is **reversed** and this matter is **remanded** for further administrative proceedings consistent with this Opinion and Order; and (3) Judgment is entered in favor of Plaintiff.

DATED: September 17, 2026

HON. BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE